# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CLARENCE JOHNSON**                                              **CIVIL ACTION**

**VERSUS**                                                       **NO. 13-469**

**N. BURL CAIN, WARDEN**                                     **SECTION "F"(1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

Petitioner, Clarence Johnson ("Johnson"), is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.[1]  On April 5, 2007, he was charged by bill of indictment with one count of second-degree murder, along with this mother, Vanessa Johnson.[2]  On August 11, 2008, Johnson proceeded to trial.[3]  On August 12, 2008, the jury returned a verdict of guilty.[4]  On August 18, 2008, the trial court sentenced Johnson to the mandatory sentence of life imprisonment

---

[1] Rec. Doc. No. 12, Petition.

[2] State Rec., Vol. 1 of 5, Bill of Indictment, 4/5/07.

[3] State Rec., Vol. 1 of 5, Minute Entry, 8/11/08.

[4] State Rec., Vol. 1 of 5, Minute Entry, 8/12/08; Responsive Verdict Form, 8/12/08.

without the possibility of parole.[5]  The Louisiana Fourth Circuit Court of Appeal affirmed Johnson's conviction on September 16, 2009.[6]  The Louisiana Supreme Court denied his related writ application on April 16, 2010.[7]

On or about February 9, 2011, Johnson filed an application for post-conviction relief with the state district court.[8]  That application was denied on February 27, 2012.[9]  His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on May 3, 2012,[10] and by the Louisiana Supreme Court on December 14, 2012.[11]

On or about March 7, 2013, Johnson filed a petition for federal *habeas corpus* relief.[12]  In his federal petition he asserts six grounds for relief: (1) insufficient evidence to support his conviction; (2) withholding of favorable evidence in violation of *Brady v. Maryland*; (3) denial of adequate appellate review due to an incomplete trial record; (4) his life sentence is constitutionally excessive; (5) ineffective assistance of trial counsel when counsel conceded Johnson's guilt to the jury in his closing argument; and (6) ineffective assistance of trial counsel fo failing to present alibi

---

[5]State Rec., Vol. 1 of 5, Sentencing Minute Entry, 8/18/08; Sentence of the Court, 8/18/08.

[6]*State v. Johnson*, 22 So. 3d 205, (La. App. 4 Cir. 2009); State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2009-KA-0259, 9/16/09.

[7]*State v. Johnson*, 31 So. 3d 1054 (La. 2010); State Rec., Vol. 4 of 5, La. S. Ct. Order, 2009-K-2263, 4/16/10.

[8]State Rec., Vol. 2 of 5, Application for State Post-Conviction Relief, 2/9/11.

[9]State Rec., Vol. 1 of 5, Minute Entry Judgment, 2/27/12.

[10]State Rec., Vol. 5 of 5, 4th Cir. Order, 2012-K-0520, 5/3/12.

[11]State Rec., Vol. 5 of 5, La. S. Ct. Order, 2012-KH-1273, 12/14/12.

[12]Rec. Doc. 3, Petition.

witnesses.[13] The State concedes the timeliness of Johnson's application, and that all of his claims are properly exhausted, except for his excessive sentence claim, which the State argues is in procedural default.[14]

## I.    *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[13]Rec. Doc. 3-1, Memorandum in support of petition.

[14]Rec. Doc. 12, State's Response.

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas

4

courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from

5

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. *White v. Woodall*, 134 S.Ct. 1697, 1701 (2014).

## II.   *Facts*

On direct appeal, the Louisiana Fourth Circuit Court of Appeal laid out in detail the facts of this case:

> Robert Dawson was shot and killed on February 7, 2007, near the Melpomene Housing Development. New Orleans Police Officer Mark McCraney, a resident of and liaison officer to the housing development, received an anonymous phone call on that day shortly after 7:00 p.m. informing him that someone had been shot near the intersection of Simon Bolivar Avenue and Clio Street. When Officer McCraney arrived at the scene, other New Orleans Police Department (NOPD) officers were securing the site. Officer McCraney found the victim lying unconscious in the grass, with several bullet wounds to his torso. As the EMTs placed Robert Dawson in the ambulance, he regained consciousness and told Officer McCraney that the defendant was the man who shot him. Officer McCraney identified the defendant at trial as the person whom Robert Dawson said had shot him. The officer also identified an aerial photograph of the housing development, pointing out the location of the crime scene and his own apartment in relation thereto. Further, Officer McCraney also identified pictures of the apartment occupied by Mrs. Vanessa Johnson, the defendant's mother. He stated that Mrs. Terrell Rayfield and her son, Darryl, lived in the apartment directly across the hall from the Johnson's apartment.
>
> Tim Carter, a city paramedic, responded to the call regarding the shooting. Carter arrived at the scene at approximately 7:15 p.m. and worked on Robert Dawson's wounds before transporting him to the hospital. Carter assessed that the victim suffered from several bullet wounds, but Carter noted that the victim was coherent and able to answer questions. Carter stated that he also remembered the victim conversing with a police officer as he was placed in the ambulance. Carter recalled that the victim asked him if he was going to die.

On the night of February 7, 2007, NOPD Officer Robert Norris responded to a call of aggravated battery by shooting at Clio Street and Simon Bolivar Avenue. Officer Norris noted that the victim was sitting up in the ambulance, speaking to the EMTs. Officer Norris observed bullet casings, a blue bicycle, and black hat at the scene. He spoke to Officer Robert O'Bryan and observed Officer McCraney at the scene. Officer Norris returned to his vehicle and wrote a report on the incident based on what he learned from police officers at the scene.

Tanesha Santemore, forensic scientist for the NOPD, processed the crime scene by taking photographs, collecting evidence, and eventually rendering a report of her findings. At trial, Ms. Santemore identified pictures of the crime scene noting a blue bicycle, a baseball cap, and five orange cones marking the positions of bullet casings. She also identified in court those items as evidence collected at the crime scene. Meredith Acosta, expert firearms examiner with the Jefferson Parish Sheriff's Office, tested five bullet casings supplied to her by Officer Keys. Ms. Acosta determined that those casings were from .380 caliber bullets and were fired by a Larsen, model L380 semi-automatic pistol bearing serial number 440721. The bag containing the bullet casings bore Item number B 010707.

Sergeant Ronald Ruiz, Jr., the lead investigator in the case, arrived at the crime scene upon being notified that the victim had died in surgery. After speaking with witnesses Edward Wilbon and Darryl Rayfield, Sgt. Ruiz developed defendant Clarence Johnson and his mother, Vanessa Johnson, as suspects. Sgt. Ruiz located a photograph of Vanessa Johnson which he presented to Edward Wilbon in a six-photo lineup. Wilbon identified the picture of Vanessa Johnson as defendant's mother. Sgt. Ruiz subsequently obtained arrest warrants for the suspects and a search warrant for their apartment. Sgt. Ruiz executed the search warrant at approximately 1:30 a.m. on February 8, 2007, while Vanessa Johnson was at home. Pursuant to the search, Sgt. Ruiz confiscated four pictures of the defendant. Shortly thereafter, Sgt. Ruiz charged Vanessa Johnson with murder. The defendant turned himself in to the police on February 9, 2007.

Edward Wilbon testified that he knew the victim and attended school with the defendant. On the day of the shooting, Wilbon and a few of his friends (among them, Darryl Rayfield), played basketball with the victim on a court in the housing development. During this time, the defendant and the victim got into a fight. When the fight ended, the victim took the defendant's hat. Wilbon asked the defendant what the dispute was about and suggested to the defendant that he and the victim reconcile their differences. The defendant left the area indicating that he would return. A short while later, Wilbon and his friends went to the grocery store on Clio and Simon Bolivar; soon after, they returned to the basketball court. From there, Wilbon accompanied Darryl Rayfield to Rayfield's apartment, which was across the hall from the Johnsons' apartment. As Wilbon sat in Rayfield's kitchen, he could hear the defendant speaking with his mother in their apartment. When Wilbon left

Rayfield's apartment, he noticed that the defendant was dressed in black clothing. Wilbon saw the defendant leave his apartment and drive away in a gold car with two other people. Wilbon returned to the basketball court, where he saw the victim riding his bike through the housing development.

Fifteen minutes later, Wilbon, Rayfield, the victim, and another friend decided to ride their bikes to Wilbon's aunt's home near St. Claude Avenue. As the group rode toward Simon Bolivar, Wilbon saw the defendant in the same gold car make a U-turn on Simon Bolivar and drive toward Wilbon and the victim. Wilbon alerted the victim that the defendant was approaching in a car and suggested he leave the area. At that point, Wilbon saw the defendant jump from the back seat of the gold car and shoot the victim. After firing several shots, the defendant jumped back into the back seat of the gold car and rode away. Wilbon did not recognize the driver or the other passenger in the gold car. Wilbon then sought Officer McCraney. When he could not find Officer McCraney, Wilbon returned to comfort the victim until an ambulance transported the victim to the hospital. After Officer McCraney arrived and spoke to the victim, he accompanied Wilbon to the Sixth District police station where Wilbon recounted the day's events, and he identified the defendant as the shooter. It was then that Wilbon identified a picture of Vanessa Johnson from a photographic lineup. In court, Wilbon identified the defendant as the man Wilbon saw shoot the victim.

Dr. Samantha Huber, a forensic pathologist with the Orleans Parish Coroner's Office, performed the autopsy on the body and determined that the victim suffered from eight gunshot wounds. Two of the wounds hit vital organs—causing the victim to bleed to death. Dr. Huber retrieved several bullets from the body.

The State and the defense stipulated that a .380 Larsen semi-automatic pistol was recovered on March 23, 2007, but not at the Johnsons' apartment.

The defense called Sgt. Ronald Ruiz, Jr., to testify about his interaction with Edward Wilbon on the night of the shooting. Sgt. Ruiz recalled that he interviewed Wilbon twice that night; the first interview was not recorded, but the second interview was. Sgt. Ruiz identified the audio recording of the statements of Officer McCraney and Wilbon taken on the night of the shooting. Sgt. Ruiz stated that he placed the audio tape in Central Evidence and Property at the NOPD.

Edward Wilbon was called by the defense and questioned about statements he made during prior motions hearings in the case. Wilbon denied saying that he saw Vanessa Johnson hand a gun to the defendant, but he did claim to hear Vanessa Johnson tell the defendant to "go get them mother f* * * * * *." When asked by defense counsel

if he remembered testifying before the grand jury, Wilbon responded in the negative.[15]

## III.   Petitioner's Claims

### 1.      Insufficient evidence to support his conviction

In his first claim, Johnson asserts that there was insufficient evidence to support his conviction for second-degree murder.   In support of this claim, Johnson relies on conflicting testimonies of the prosecution witnesses, and undisclosed grand jury testimony given by two other witnesses.   The Fourth Circuit Court of Appeal rejected this claim on direct appeal, first laying out the controlling standard of law as follows:

> To evaluate whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 334, 99 S.Ct. 2781, 2797, 61 L.Ed.2d 560 (1979); *State v. Ragas*, 98–0011, p. 13 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106. The *Jackson* standard applies to all evidence, both direct and circumstantial, to test whether it is sufficient to prove guilt beyond a reasonable doubt to a rational jury. *State v. Neal*, 00–0674, p. 9 (La.6/29/01), 796 So.2d 649, 656, citing *State v. Captville*, 448 So.2d 676, 678 (La.1984). The reviewing court, however, is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. *State v. Smith*, 600 So.2d 1319, 1324 (La.1992). Within the bounds of rationality, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. *State v. Casey*, 99–0023, p. 14 (La.1/26/00), 775 So.2d 1022, 1034. The fact finder's discretion will be impinged upon "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Marshall*, 04–3139, p. 5 (La.11/29/06), 943 So.2d 362, 367, quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Rather than argue that the Fourth Circuit failed to apply the *Jackson* standard, Johnson simply argues that due to the conflicting testimonies of the witnesses, no rational juror could have

---

[15]*State v. Johnson*, 22 So. 3d 205 (La. App. 4 Cir. 2009); State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2009-KA-0259, 9/16/09.

found the essential elements of the crime beyond a reasonable doubt.  However, in light of the deferential standards of review under the AEDPA, this claim must fail.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D.La. Apr.6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).  It is clear that Johnson has not made the showing in the instant case.  Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which, as the Louisiana Fourth Circuit noted, held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319. Importantly, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)) (emphasis added).  Therefore, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  *Cavazos v. Smith*, ―― U.S. ――, ――, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011).  Moreover, as the United States Fifth Circuit Court of Appeals has observed: "[A] state prisoner's burden is especially heavy on habeas review of the sufficiency of the evidence.

The jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law." *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks omitted). Further, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, —U.S. —, —, 132 S.Ct. 2148, 2152, 183 L.Ed.2d 32 (2012); *see also Coleman v. Johnson*, — U.S. —, —, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).

Under these stringently deferential standards of review, Johnson is not entitled to relief. In fact, even his own arguments regarding the evidence attack the weight of the evidence (the amount of credibility the jury ought to have given the witnesses' testimonies) rather than the sufficiency of the evidence itself. The Louisiana Fourth Circuit Court of Appeal highlighted this issue in its opinion, and set out the proper standard under *Jackson*. Thus, the Fourth Circuit Court declined to reassess the credibility of the witnesses, a question of fact which was properly before the jury.

Johnson was convicted of second degree murder, which under Louisiana law is the killing of a human being when the offender has a specific intent to kill or cause great bodily harm. La. R.S. 14:30.1(A). The jury apparently weighed the testimonies of the witnesses and concluded that Wilbon's testimony that he saw Johnson shoot Dawson, as well as Officer McCraney's testimony that Dawson made a dying declaration that Johnson shot him, were credible. The decision of the Louisiana Fourth Circuit Court of Appeal on this issue was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Johnson is not entitled to relief on this claim.

**2.    *Brady* violation**

Johnson's next claim is that the State failed to disclose evidence to the defense as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  Specifically, Johnson contends that the grand jury testimony of two witnesses, Terrell Morgan and her son, Darryl Rayfield contained two major differences of fact that prove Wilbon's testimony was "false" and that the defense did not have the opportunity to question him about these alleged lies.  The testimonial statements that Johnson argues undermined Wilbon's testimony are (1) Rayfield and Morgan's statements that Wilbon did not come to the apartment after the initial fight, which undermined Wilbon's testimony that he had heard a conversation between Johnson and his mother in which she told him to go kill Dawson; and (2) testimony from Rayfield stating that he was further away from the shooting than Wilbon suggested.  The state courts rejected this claim on post-conviction review, finding simply that all of Johnson's claims lacked merit.

The AEDPA places severe limitations on this Court's review of the state court's decision rejecting a petitioner's *Brady* claim.  The United States Fifth Circuit Court of Appeals has cautioned:

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."); *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."). Rather, [a federal court] decide[s] whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

*Dickson v. Quarterman*, 462 F.3d 470, 477–78 (5th Cir. 2006).  Johnson has not met that high bar in this case.  The law regarding *Brady* claims is clear:

> A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the *Brady* duty extends to

> impeachment evidence as well as exculpatory evidence, and *Brady* suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

*Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (per curiam) (internal citations and quotation marks omitted).

Here, Johnson has failed to meet the requirement of materiality. It is not enough to show that the evidence might have been helpful to the defense. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 436–37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense."). Rather, the withheld evidence must have been "material" in the constitutional sense. On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Youngblood*, 547 U.S. at 870 (internal citations and quotation marks omitted).

Here, the alleged discrepancies in Wilbon's story are based on grand jury testimony by Darryl Rayfield and his mother, Terrell Morgan–not any prior testimony of Wilbon himself. As such, the testimonies do not directly undermine Wilbon's testimony, and could not be used to impeach him at trial. Nor does it appear from the record that either Rayfield or his mother testified at Johnson's trial. Thus, not only could it not be used as impeachment evidence, it cannot be considered "exculpatory" because none of the testimony states that Johnson did not commit the murder, rather only that Rayfield and Morgan both had not seen the murder. *See, e.g., Anderson v.*

*Cooper*, No. CIV.A. 10-1691, 2011 WL 666845, at *12 (E.D. La. Jan. 19, 2011) *report and recommendation approved*, No. CIV.A. 10-1691, 2011 WL 666874 (E.D. La. Feb. 14, 2011) (no indication that police report was exculpatory where witness did not say the petitioner did not in fact kill the victim, but rather said she did not see the petitioner kill the victim).

It was not contrary to, nor an unreasonable application of, Supreme Court precedent for the state courts to reject Johnson's *Brady* claim.  He is not entitled to federal *habeas corpus* relief on this claim.

### 3.    Inadequate appellate review due to incomplete trial record

In his next claim, Johnson contends that the state trial court's failure to transcribe every bench conference violated his right to adequate appellate review of his conviction.  As an initial matter, to the extent Johnson raises this issue as a violation of state law, his claim must fail, as it cannot establish a federal constitutional violation sufficient to warrant *habeas corpus* relief.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal *habeas* review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law).

Johnson does state that the failure to include the bench conferences in the transcript violated his Fourteenth Amendment Right to due process.  He therefore has stated a cognizable claim for federal *habeas corpus* review, *see Griffin v. Illinois*, 351 U.S. 12, 19-21 (1956), however, not a meritorious one.  In cases where states, such as Louisiana, have provided criminal defendants with a right to an appeal, the United States Fifth Circuit Court of Appeal has explained that:

[T]he Supreme Court [in *Griffin*] held that the Due Process and Equal Protection clauses of the Fourteenth Amendment require that states provide indigent defendants with a trial transcript free of charge when it is necessary for meaningful appellate review. However, the state is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "[N]or is the state required to furnish complete transcripts so that the defendants ... may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982).

*Kunkle v. Dretke*, 352 F.3d 980, 985-86 (5th Cir. 2003) (citing *Griffin*, 351 U.S. at 19-20).

Here, Johnson claims that he cannot properly raise all errors in his case without the transcribed bench conferences. However, aside from alleging that the bench conferences dealt with "important, evidentiary matters" he has not shown that there was a particular ruling that he would like to challenge. Essentially, he is requesting a more complete record in order to find potential constitutional errors, not to support specific errors he has already clearly identified.

The Louisiana Fourth Circuit rejected this claim, relying on Louisiana precedent, but reaching a conclusion in accord with federal law. The Court held that "absent a showing of prejudice based on the missing portion of the transcripts, a defendant will not be entitled to relief because of an incomplete record."[16] This decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent, where Johnson has failed to meet his burden of illustrating why the transcript of the bench conferences is necessary to support his claims. Johnson is not entitled to federal *habeas corpus* relief on this claim.

---

[16]*State v. Johnson*, 22 So. 3d 205 (La. App. 4 Cir. 2009); State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2009-KA-0259, 9/16/09.

### 4.     Excessive Sentence

Johnson contends that his life sentence is constitutionally excessive, due to his age at the time of conviction and the lack of direct evidence available against him at trial.  The State argues this claim is procedurally barred.  The State is correct.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

*Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). When a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. *Id.* ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, there is no question that the state courts denied this claim on procedural grounds.  The Louisiana Fourth Circuit noted that "[T]he record does not indicate that the defendant objected to the sentence. Thus, the issue is not preserved for appellate review."[17]  Without additional reasons assigned, Johnson's related writ application to the Louisiana Supreme Court was denied.

It is also clear that Louisiana's rule that a claim regarding an appealable issue is waived if not asserted on direct appeal is an independent and adequate state court rule sufficient to support a

---

[17]*Id.*

16

procedural bar in federal court.  *See, e.g.*, *Bella v. Cain*, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015), *Hurd v. Cain*, Civ. Action No. 09–3112, 2009 WL 3063354, at *7 (E.D.La. Sept. 23, 2009); *Simms v. Cain*, Civ. Action No. 07966, 2008 WL 624073, at *27 (E.D.La. Mar. 4, 2008); *Dorsey v. Louisiana*, Civ. Action No. 07036, 2007 WL 1747014, at *4 (E.D. La. June 15, 2007); *Hill v. Cooper*, Civ. Action No. 04–2588, 2007 WL 458207, at *7 (E.D.La. Feb. 8, 2007); *Stevenson v. Cain*, Civ. Action No. 06–1244, 2006 WL 2850167, at *14 & n. 39 (E.D.La. Oct. 4, 2006).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).  Here, Johnson has shown neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992). Johnson has made no attempt in his federal petition to establish cause for the failure to raise the instant claim.  "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Because Johnson therefore has not met the "cause and prejudice" test, this Court should consider this claim only if the application of the procedural bar would result in a fundamental

miscarriage of justice.  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).  The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

*Lucas v. Johnson*, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).  Applying that standard, the Court finds that Johnson does not make a persuasive showing that he is actually innocent of the charges against him. Therefore, he has not demonstrated that any miscarriage of justice will result from the application of the procedural bar. Accordingly, Johnson's claim challenging his sentence as excessive is procedurally barred in this federal court.

### 5. and 6.      Ineffective assistance of trial counsel

In his last two claims, Johnson contends that he received ineffective assistance of trial counsel when (1) counsel conceded Johnson's guilt to the jury in his closing argument; and (2) counsel failed to present alibi witnesses.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that

his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

19

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ——, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous

20

care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id*. at 788 (citations omitted; emphasis added).

Here, Johnson's first assertion is that his counsel conceded his guilt during closing arguments. This part of his claim must fail. As the State noted in its response, the closing arguments were not transcribed in the original transcript this Court received in the state court records. However, the undersigned Magistrate Judge ordered defense counsel's closing arguments transcribed out of an abundance of caution to review the substance of this claim. After reviewing the transcript of the argument, it is apparent that Johnson's counsel never conceded his guilt during closing arguments.[18] This claim therefore simply lacks a factual basis.

The second part of Johnson's claim is that his counsel was ineffective for a failing to present alibi witnesses. As support for this claim, Johnson has attached four affidavits from individuals who

---

[18]Rec. Doc. No. 25, Transcript of Defense Counsel's Closing Argument, 8/12/08.

purport to have been with Johnson on the day of the shooting.[19]  Johnson alleges that he informed his counsel of the existence of these alibi witnesses, and the affidavits assert the same.  He claims that his counsel ignored him, telling him the witnesses were unnecessary because the state needed to prove its case beyond a reasonable doubt.

First, under *Strickland*, as noted above, a great amount of deference is due to counsel's strategic decisions.  466 U.S. at 689.  In order to prevail on a claim based on counsel's failure to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense*."*  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted).

Here, while Johnson has provided affidavits of four different people who purport to have seen him at another location at or about the time the shooting took place, the affidavits are rather unpersuasive.  Each affidavit is from a family member: a sister-in-law, a sister, and two cousins.  They are nearly identical in form.  One was signed on November 29, 2010, and the rest not until January 27, 2011.  Taken as a group, they appear to have been prepared simultaneously, perhaps by the same person, years after the event in question.  Most troubling perhaps, is the affidavit signed by Dorian Johnson, which simply has blanks which have not been filled in regarding which other "friends and family" members were present.  Rather, it only names himself and petitioner as present, suggesting he either failed to fill out the names, or could not recall who else was present.

It was not unreasonable, under the circumstances, for the state courts to reject this claim on the merits.  Even taking the affidavits at best at face value, and disregarding the extremely similar

---

[19]Rec. Doc. No. 3-4, Exhibits.

language and the blank spaces one contains regarding who was present, Johnson has not shown that calling these witnesses would have created a reasonable probability of a different outcome at his trial.  It is unlikely that the purported testimony from his family members would have overcome the testimony of the eyewitness to the shooting, the dying declaration of the victim that was attested to by the police officer, and various testimony regarding the fight that occurred earlier in the day between Johnson and the victim.  Johnson is not entitled to federal *habeas corpus* relief on this claim.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Carlton Charles be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[1]

New Orleans, Louisiana, this ___4th___ day of ___December___, 2015.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

23